IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division



| | )
PAUL J. PLOFCHAN JR., | )
| )
        *Plaintiff*, | )
| )
   v. | )   Civil Action No. 1:16-cv-550
| )
ERIC K. FANNING, as the Secretary of the Army, | )
and THOMAS C. SEAMANDS, as the Commander, | )
U.S. Army Human Resources Command, | )
| )
        *Defendants*. | )
| )

**Memorandum Opinion**

This matter comes before the Court on a Motion for Temporary Restraining Order ("TRO") filed by Plaintiff Paul Plofchan Jr. Dkt. No. 3. Plaintiff is a probationary officer and a 1st Lieutenant in the U.S. Army 101st Airborne Division. Plaintiff seeks to enjoin the Army from involuntary eliminating him.

**I. Background**

*A. Regulatory Background*

The Army's regulations governing the discharge of officers is contained in Army Regulation 600-8-24. These regulations list a number of reasons for which the Army may discharge an officer. *Id.* ¶ 4-2. If an army official initiates an elimination action against a probationary officer, like Plofchan, he must first notify "the implicated officer in writing that elimination action has been initiated and that he or she is required to show cause for retention." *Id.* ¶¶ 4-20, 21. The initiating official "advises the officer of the reasons supporting the elimination action and the factual allegations supporting the reasons." *Id.* The initiating official

1

must also "advise the officer of the least favorable discharge or characterization that he or she may receive," and "advise the officer that he or she has 30 calendar days to acknowledge in writing, to prepare a written statement of rebuttal, and/or elect" to resign, request discharge, or apply for retirement. *Id.* "If an Honorable . . . discharge is recommended there will be no Board of Injury, unless directed . . . ." *Id.* After receipt of the officer's written rebuttal, the initiating official reviews the relevant material and determines whether to officially recommend the officer's separation from the Army. *Id.* If elimination is recommended, the file with all of the relevant material is forwarded to the Commanding General of the HRC. *Id.* HRC then forwards the case to the Deputy Assistant Secretary of the Army who makes a final decision on behalf of the Secretary of the Army. *Id.*

If the Deputy Assistant Secretary decides in favor of the officer's separation, the officer may seek review of the decision from the Army Discharge Review Board ("ADRB"). The ADRB does not have authority to reverse or vacate a discharge, but may, subject to review by the Secretary of the Army, change the characterization of service and/or the reason for discharge. *See* 10 U.S.C. § 1553; 32 C.F.R. § 581.2. The officer may also seek review from the Army Board for the Correction of Military Records ("ABCMR"), which has authority to "correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C.A. § 1552(a)(1). The ABCMR also "may, subject to review by the Secretary concerned, change a discharge or dismissal, or issue a new discharge, to reflect its findings." 10 U.S.C.A. § 1553(b); *Guerra v. Scruggs*, 942 F.2d 270, 273 (4th Cir. 1991). Decisions of the ABCMR are subject to judicial review and "can be set aside only 'if they are arbitrary, capricious or not based on substantial evidence.'" *Randall v. United States*, 95

F.3d 339, 348 (4th Cir. 1996); (quoting *Chappell v. Wallace*, 462 U.S. 296, 303, 103 S. Ct. 2362, 2367, 76 L. Ed. 2d 586 (1983)).

*B. Factual Background*

Plofchan asserts that in May of 2015 he was illegally stopped, assaulted, and arrested by Vanderbilt University Police Department officers in Nashville, Tennessee. The officers arrested Plofchan and charged him with public intoxication, resisting arrest, and assault against a police officer. Subsequently, all charges were dropped against Plofchan. However, Plofchan's commanding officer Colonel Kyle J. Marsh recommended that Major General Volesky reprimand Plofchan based on this event. General Volesky issued an administrative reprimand against Plofchan on August 19, 2015, and indicated that he was considering filing the reprimand in Plofchan's Official Military Performance File ("OMPF"). Plofchan maintains that General Volesky conducted no investigation into the accusations made against him. Pflofchan filed a rebuttal memorandum and a supplemental memorandum to his rebuttal.

Thereafter, three officers were tasked with reviewing the documents relating to Plofchan's arrest and his military record. Captain Brandon Lapehin and Lieutenant Colonel Bryan Schoot reviewed the Reprimand and recommended filing it in Plofchan's local file. Colonel Marsh recommended filing the Reprimand in Plofchan's OMPF. General Volesky ultimately decided to file the Reprimand in Plofchan's OMPF.

On November 12, 2015, General Volesky also decided to initiate an elimination action against Plofchan. With the assistance of counsel, Plofchan filed a memorandum in rebuttal to the elimination action on December 12, 2015. On February 10, 2016, General Volesky recommended that Plofchan be eliminated from service and receive an honorable

characterization of service. Upon this recommendation, Plofchan's file was sent to the U.S. Army Human Resources Command in Alexandria ("HRC-Alexandria").

On March 10, 2016, Brigadier General Scott Brower dismissed the elimination action because the wrong procedures had been used. However, that same day, Brower initiated a new elimination action using the proper procedures. On April 12, 2016, Plofchan, with the assistance of counsel, filed a memorandum in response to the elimination action. On May 4, 2016, Brower recommended that Plofchan be eliminated from the Army and the recommendation was forwarded to HRC-Alexandria for final review and approval. Plofchan has not yet been eliminated. Before he can be separated, the Secretary of the Army, acting through the Deputy Assistant Secretary of the Army, must approve the separation recommendation.

While Brigadier General Bower's recommendation was pending, Plofchan filed this lawsuit on May 18, 2016. With this action, Plofchan asks the Court to halt the administrative processing of the elimination action, dismiss the elimination action, and enjoin the Army from engaging in future elimination actions based on the dropped criminal charges. On June 9, 2016, Plofchan filed the currently pending TRO. The Court set the Motion for hearing on June 24, 2016, and required Plofchan to notify the government of the hearing. After notification, the government filed a memorandum in opposition and appeared at the hearing. Plofchan also filed a reply brief shortly before the hearing, which the Court had time to consider before rendering a decision.

## II. Legal Standard

"The standard for granting either a TRO or a preliminary injunction is the same." *Moore v. Kempthorne*, 464 F. Supp. 2d 519, 525 (E.D. Va. 2006) (citations omitted). "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2]

that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Res. Def. Counsel*, 555 U.S. 7, 20 (2008); *see also Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009) (citing *Winter*, 129 S. Ct. at 374), *vacated on other grounds*, 130 S. Ct. 2371 (2010), *reinstated in relevant part*, 607 F.3d 355 (4th Cir. 2010). The plaintiff bears the burden of establishing each of these four factors by a "clear showing." *Winter*, 555 U.S. at 22.

### III. Analysis

*A. Whether Plaintiff is Likely to Succeed on the Merits of His Claim*

Plofchan argues that he will ultimately succeed on the merits of his claim because the Army does not have authority to discharge him. Army Regulation 600-8-24, paragraph 4-4a dictates that "[a]n officer will not be considered for involuntary separation because of conduct that has been the subject of judicial proceedings that resulted in an acquittal." Plofchan argues that because the criminal charges that were brought against him on May 24, 2015, were dropped, they cannot form the basis of an involuntary separation action.

"When considering the plaintiff's likelihood of success" on the merits of his claims challenging military personnel actions, this Court must first decide whether it should "resolve the issues before it" in light of "the amount of deference normally accorded to the military with respect to its internal procedures." *Guerra v. Scruggs*, 942 F.2d 270, 275 (4th Cir. 1991). The Fourth Circuit has adopted a two part "framework for determining whether a court should review a military decision. First, there must be an 'allegation of the deprivation of a constitutional right, or an allegation that the military has acted in violation of applicable statutes or its own regulations.' Second, the plaintiff must have exhausted the 'available intraservice corrective

measures.'" *Id.* at 276 (quoting *Mindes v. Seaman*, 453 F.2d 197, 201 (5th Cir. 1971)). Plofchan has satisfied the first part of this framework in arguing that the Army has violated its own regulations. Plofchan, however, has not satisfied the second part of this framework—exhaustion of intraservice remedies—because he has not even been discharged yet, let alone appealed his discharge to the ADRB or the ABCMR. *See id.*

The Fourth Circuit has recognized an exception to the exhaustion requirement where the outcome of exhausting the administrative remedies would "predictably be futile" or inadequate. *Id.* (quoting *Dooley v. Ploger*, 491 F.2d 608, 614–15 (4th Cir. 1974)). Plofchan argues that given the numerous previous decisions rejecting Plofchan's argument that the Army does not have the authority to discharge him any appeal would be futile. Plofchan also asserts that the appeal would be inadequate because the appeal would take years, during which he would miss out on training and career advancement opportunities. The Court disagrees. Just because General Volsky and General Brigadier Bowers have recommended Plofchan's elimination does not mean that the ABCMR, "the highest administrative body in the Army's own appellate system," will come to the same conclusion. *Hodges v. Callaway*, 499 F.2d 417, 422 (5th Cir. 1974). Further, the Court acknowledges that "the Army ought to be the primary authority for the interpretation of its own regulations." *Id.* If Plofchan exhausts his administrative remedies and then seeks judicial review, "the court will at least have a definitive interpretation of the regulation and an explication of the relevant facts from the ABCMR." *Id.* Any harm suffered by Plofchan in the meantime "is outweighed by the considerations of efficiency and agency expertise in requiring exhaustion." *Guerra*, 942 F.2d at 277.

The plaintiff seeking a TRO in *Guerra* had similarly failed to appeal his recommended discharge from the Army to the ABCMR before seeking judicial review. *Id.* The Fourth Circuit

declined to find that this appeal would be futile or inadequate, even though Guerra had admitted to using cocaine and the appeal would likely take years. In contrast, the Fourth Circuit has not required a soldier to first exhaust his administrative remedies before seeking judicial review when "the soldier was petitioning for a writ of habeas corpus on the ground that he was a conscientious objector." *See id.* (explaining *United States ex rel. Brooks v. Clifford*, 412 F.2d 1137, 1139–41 (4th Cir. 1969)). The Fourth Circuit found it significant that the soldier in *Clifford* would have to continuously "violate his own conscience" while he exhausted his remedies. *Id.* This case is much closer to *Guerra* and does not contain the "dire consequences" present in *Clifford*. *See id.* Accordingly, the Court finds Plofchan's motion is premature and, as a result, Plofchan "has no likelihood of success on the merits of his case because he has failed to exhaust his administrative remedies." *Id.*

### B. Whether Plofchan Has Established That He Will Suffer Irreparable Injury

The next factor in the TRO test is whether the plaintiff will suffer irreparable harm absent a TRO. The United States Court of Appeals for the Fourth Circuit has dictated that "in the context of discharges of military employees, plaintiffs . . . have an increased burden of showing irreparable injury." *Guerra v. Scruggs*, 942 F.2d 270, 273-74 (4th Cir. 1991) (citing *Sampson v. Murray*, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974) (declining to find irreparable injury would result from plaintiff's discharge even if plaintiff showed loss of income, damage to her reputation, lack of savings, and difficulties in immediately obtaining other employment)). Irreparable harm under this heightened standard should only be found in "extraordinary cases." *Sampson*, 415 U.S. at 92 n. 68.

Plofchan argues that if the TRO is not issued, he will suffer irreparable harm in the form of damage to his reputation and loss of his career as an enlisted officer with the Army. While

this may be true, the harm Plofchan will suffer as a result of a discharge is not sufficiently great under the heightened standard for establishing irreparable harm. *Guerra* is instructive.

The Plaintiff in *Guerra* was an enlisted Army private who was recommended for general discharge because he had tested positive for cocaine use and had missed a P.T. formation due to alcohol intoxication. *Id.* at 272-73. Instead of appealing to the ADRB or the ABCMR, the plaintiff sought an injunction in the district court to prevent his general discharge. *Id.* The Fourth Circuit found that the prospect of a general discharge was "not an injury of sufficient magnitude to warrant an injunction." *Id.* at 274 (quoting *Chilcott v. Orr*, 747 F.2d 29, 34 (1st Cir. 1984)); *see also Hartikka v. United States*, 754 F.2d 1516, 1518 (9th Cir. 1985) (holding that loss of income and damage to reputation resulting from the stigma of a less than honorable discharge were insufficient under *Sampson* to justify injunctive relief). The Court further explained that "the only harm Guerra could suffer is the damage to his reputation during the interim between his discharge and the decision of the board reviewing his discharge." *Id.* at 274-75. The harm Pflochan faces is the same unexceptional harm.

While acknowledging this heightened standard, Plofchan attempts to distinguish his case from *Guerra*. First, Plofchan notes that Guerra was an enlisted soldier rather than a commissioned officer. Second, Plofchan asserts that Guerra was eliminated due to admitted conduct (cocaine use) while he denies the grounds upon which his recommended elimination is based. Not only has Plofchan failed to articulate why these characteristics are significant, the case law demonstrates that these differences are inapposite.

First, the *Guerra* court cited *Hartikka v. United States*, a case almost identical to this one in which an Air Force officer sought to enjoin the Air Force from eliminating him through a general discharge. 754 F.2d 1516 (9th Cir. 1985). The *Hartiakka* court declined to find

8

irreparable harm and denied the officer's request for a temporary injunction despite the fact that the plaintiff was an officer. *Id.* Second, the *Guerra* court relied heavily on *Chilcott v. Orr* in reaching its decision, another almost identical case in which an enlisted airman denied the charges that formed the basis of his discharge. 747 F.2d 29 (1st Cir. 1984). The *Chilcott* court also declined to find irreparable injury and denied the plaintiff's motion for a temporary injunction even though the grounds for elimination were in dispute.

Notably, Plofchan faces an elimination with an honorable characterization of service. In contrast, the servicemen in *Hartikka* and *Chilcott* faced "the stigma attached to a general discharge." *Id.* at 33; 754 F.2d at 1518. Thus, the harm faced by the plaintiffs in *Hartikka* and *Chilcott* was significantly greater than the harm Plofchan potentially faces. In light of *Guerra*, *Hartikka*, and *Chilcott*, the Court finds Plofchan has not met the heightened irreparable injury requirement necessary to obtain a TRO in this case.

## IV. Conclusion

As explained above, the Court finds Plofchan has failed to establish the first two factors of the TRO test. As the movant has the burden of establishing all four factors of the TRO test, the Court need not even assess the final two factors. The Court, therefore, finds good cause to DENY the Motion for a Temporary Restraining Order. An appropriate Order will issue.

/s/
Liam O'Grady
United States District Judge

June 29, 2016
Alexandria, VA

9